## BLODGETT *v.* JACKSON.

After the signatures to a note have been proved, such note may be read in evidence, not only to show the terms of the contract which the defendants made, but also to show the party or parties with whom it was made; and if a note be made payable to a firm, the note itself is competent evidence, after proof of the defendants' signatures to it, of the existence of such firm, as against such defendants.

A note was made payable to Whitney, Shaw, Lent & Howes, and indorsed to the plaintiff. On trial the signatures and indorsement were denied, and, after proof of the defendants' signatures to the note, the plaintiff proved that upon the day of the date of the note, a man calling himself Lent, and as one of the firm aforesaid, sold the same to the plaintiff and indorsed it in the name of said firm:—*Held*, that, in the absence of all other evidence upon the point, possession of the note was competent evidence of ownership and of the identity of the person selling and indorsing the note, with the Lent to whom, with others, the note was payable.

When a note is made payable to a firm, and no such firm exists, the person to whom such note was given may assume such firm name, and indorse said note in the name of such firm, and it will be a good indorsement in the hands of an innocent holder, who may collect the same of the makers, under a count for money had and received.

ASSUMPSIT on a promissory note, alleged to have been made by the defendants, Eleazer Jackson and William S. Deming, on the 9th of August, 1856, payable to the order of the firm of Whitney, Shaw, Lent & Howes, at the Claremont bank, in one year, for $400, with interest, and by said firm indorsed to the plaintiff, Albro Blodgett. In a second count the plaintiff declared for $500, money had and received.

The signatures and indorsement having been denied, the plaintiff offered evidence by witnesses, tending to prove the signatures of the defendants to be genuine, and also offered evidence tending to show that John L. Farwell, cashier of the Claremont bank, and now the plaintiff in interest, having the note in possession as evidence, exhibited it to the defendant, Jackson, soon after its date,

and that he assented to its genuineness. The plaintiff also offered evidence tending to show that he informed said defendant, Jackson, within four weeks of the date of the note, that he had bought this note, and that said Jackson said that there was something wrong about it, but he supposed it would be good in the plaintiff's hands.

Said Farwell also testified that on the day of the date of the note, a person calling himself Lent, as one of the firm of Whitney, Shaw, Lent & Howes, sold him the note for $375, and indorsed it with the name of said firm, and that he had never seen the person who made said indorsement at any other time.

The plaintiff then proposed to read the note, to which the defendants objected, because there was no competent evidence of the existence of such a firm as Whitney, Shaw, Lent & Howes, or that the person who indorsed it was a person having authority to indorse it. The court ruled that the note might be read for the purpose of showing that the defendants had recognized such a firm by making a note payable to it, and that the fact that they had thus made the note payable, was competent evidence that such a firm existed. The court ruled, also, that the possession of the note, by the person who indorsed it, was competent evidence that he was the Lent named in the note, and so authorized to indorse the note. The note and indorsement were then read. To these rulings the defendants excepted.

The trial then proceeded, the defendants resisting the action, upon the allegation that the note was forged, as well as because there was not sufficient evidence of a valid indorsement. In the course of the trial, evidence was introduced tending to prove that the note was given by the defendants for a patent right, and that the person who negotiated with them, claiming to be one of said firm, wrote the note, and that the indorsement was in the same hand writing.

Upon this point of the indorsement, the court charged that if the note was indorsed by the same person to whom the defendants gave it, it was, in the hands of an innocent holder, a good indorsement; that if there was no such firm as that described in the note, the person might assume that name and indorse the note; and if there was such a firm, of which he was a member, his indorsement was sufficient.

A verdict having been rendered for the plaintiff, the defendants moved the court to set the same aside and for a new trial, because of the rulings aforesaid, and of errors in the charge, as above stated, which questions of law were transferred to the law term.

*Snow*, for the defendants.

The note in suit having been given for a patent right, and no money having been received by the defendants, the count for money had and received could, under no circumstances, be available in this action. *Foster* v. *Shattuck*, 2 N. H. 446; *Elliot* v. *Abbott*, 12 N. H. 549; *Hunt* v. *Aldrich*, 27 N. H. 31. The plaintiff was bound to prove the allegations in his special count; *Elliot* v. *Abbott*; and in order to sustain the verdict the plaintiff must maintain the following positions, all of which the defendants allege are contrary to well settled principles of law: 1. The person who merely takes a note, payable to the order of a partnership, has *primâ facie* authority to sell and indorse it in the partnership name. 2. The defendants having given a note payable to the order of Whitney, Shaw, Lent & Howes, thereby admit not only that there is such a firm, but admit the existence of the particular partnership set forth in the plaintiff's writ. 3. A person may take a note payable to the order of a fictitious partnership, and make a valid transfer of the same by indorsing the name of such fictitious partnership thereon. 4. One merely having possession of a note

payable to the order of a partnership, has, *primâ facie*, a right to sell and indorse such note in the name of the partnership.

*Cushing*, for the plaintiff, cited *Bulkeley* v. *Butler*, 2 B. & C. 441; *Tenney* v. *Sanborn*, 5 N. H. 557; *Edgerton* v. *Brackett*, 11 N. H. 218.

SARGENT, J. The case finds that competent evidence was introduced tending to prove that the signatures of the defendants to the note declared on were genuine. There remained, then, two points upon which the plaintiff needed to satisfy the jury, before he could recover upon his first count: first, that there was such a firm as Whitney, Shaw, Lent & Howes; and, second, that this note was indorsed by a member of that firm. The note was offered, then, first, to prove the existence of such firm. This fact, like any other, might be proved by the admissions of the defendants, and this note was properly read, not only as evidence of the terms of the contract into which the defendants entered, but also as evidence of the party or parties with whom the defendants made such contract; and we see no reason why the fact shown by the note that the defendants had undertaken to contract, and had, in fact, contracted with Whitney, Shaw, Lent & Howes, was not competent evidence, as against these defendants, of the existence of said firm. The first objection, therefore, was not well founded, nor can the second be any better sustained; because, if the fact of the existence of such firm be found by the jury, then, if the person indorsing the note was Lent, the member of the firm, the note was properly transferred. Farwell, the plaintiff's witness, testified that on the day of its date a person calling himself Lent, as one of the firm of Whitney, Shaw, Lent & Howes, sold him the note, and indorsed it with the name of said firm, and that the witness

Blodgett *v.* Jackson.

had never seen such person at any other time. The bare possession of this note by this person was competent evidence to be submitted to the jury, that he was the Lent named in the note, and of course a member of the firm, and authorized to indorse it in the manner he did. If a person has in his possession a document which ought to be in the hands of the owner, that raises the presumption that he is the right owner. Here was a note which the evidence tends to show was genuine, payable to Whitney, Shaw, Lent & Howes; a thing of value, and likely to be in the possession of the owner. Such possession, therefore, raised a presumption of ownership. A bill or note may in many cases be in the hands of another than the true owner, but in the absence of all evidence that the bill had got out of the hands of the right owner, possession is evidence of ownership. Where a person calling himself E. S. at Cadiz, produced there a bill brought from Lisbon, and which was the property of E. S., that raises a presumption that he brought it from Cadiz; and from the mere possession it might be inferred that he was the owner, E. S. Should proof be given that the bill had been lost or improperly obtained from the owner, that would have rebutted the presumption. In this case nothing of the kind was proved. The possession of bills and notes by clerks and bankers does not raise a presumption of ownership, because in that case the known character of the holder rebuts that presumption. There is nothing in this case thus to rebut it, and therefore the evidence was properly admitted. It was competent to be laid before the jury, and, in the absence of any thing to rebut the inference arising from that evidence, we think their finding was correct. *Bulkeley* v. *Butler*, 2 B. & C. 434. The ruling of the court was correct; and even had there been doubt upon that point at the time when the ruling was made, it seems to have been removed by the evidence afterward introduced, that the party who indorsed the

note was the same person with whom the defendants negotiated, and to whom they gave the note; and the one who wrote the note, and who claimed, at the time the note was given to him, and during the negotiation with the defendants, to be a member of such firm, and when he indorsed it he made the same claim. There was, therefore, evidence competent to be submitted to the jury upon each point which the plaintiff needed to prove to make out his case; and it does not appear that any rebutting evidence was introduced, and we see no cause to interfere with the verdict, if it was found on the first count in the declaration. But there was a count for money had and received; and a subsequent ruling of the court upon the trial leads us to examine as to whether a verdict, if rendered upon that count, could be sustained.

The court charged the jury, substantially, that if there was no such firm as that described in the note, still that the person to whom the defendants gave it might assume that name, and indorse the note by that name, and that this, in the hands of an innocent holder, would be a good indorsement. We think this ruling correct; and although this question, in this precise form, may not have been settled here, there are decisions which would seem broad enough to cover the principle involved in it. *Cross* v. *Rowe*, 22 N. H. 77; *Bank of Chenango* v. *Hyde*, 4 Cow. 567; *Williamson* v. *Johnson*, 1 B. & C. 146; *Elliott* v. *Abbott*, 12 N. H. 549; *Hunt* v. *Aldrich*, 27 N. H. 31.

We cannot see that the defendants have any reason to complain of this ruling. Such indorsement would pass the property in the note, and the plaintiff can recover upon the general count. The note is evidence of money had and received by the maker of the payee, and also of an agreement on the part of the makers to hold the money for the use of any one to whom the note may be legally transferred. *Tenney* v. *Sanborn*, 5 N. H. 557; *Edgerton* v. *Brackett*, 11 N. H. 218; *Martin* v. *Farnum*, 24 N. H. 191.

The rulings of the court being unobjectionable, the verdict must stand, upon whichsoever count it may have been found. There must, therefore, be

*Judgment on the verdict.*